UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHANNON LEE THOMPSON, <br><br> Plaintiff, <br><br> v. <br><br> COUNSELOR ROBERTSON, ET AL., <br><br> Defendants. | Case No. 3:15-cv-01527 <br><br> Judge Trauger <br> Magistrate Judge Newbern |

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

Currently pending in this pro se prisoner civil rights lawsuit is a Motion to Dismiss for Failure to Exhaust Grievance Procedures (Doc. No. 43), filed by Defendants Jerry Robertson, Victoria Mosley, Shcarey Polk, D'Andre Walker, Cassandra Benford, Vicki Freeman, Patrick Ryan, and Derrick Schofield. Plaintiff Shannon Lee Thompson filed a response to this motion in which she concedes that she has failed to exhaust administrative remedies, but argues that the fault for this failure lies with the administration of the Tennessee Prison for Women (TPW) and the Tennessee Department of Correction (TDOC). (Doc. No. 51.) For the reasons given below, the Magistrate Judge recommends that Defendants' motion be GRANTED and that this case be DISMISSED WITHOUT PREJUDICE for Thompson's failure to properly exhaust administrative remedies.

## I. Background

Thompson is an amputee who is confined to a wheelchair. She was incarcerated at the Sullivan County Jail[1] from March 23, 2015, until her transfer to the Tennessee Prison for Women on July 15, 2015. (Doc. No. 1, PageID# 7, ¶ 1.) As Thompson states in her complaint, "[s]ince my arrival at Tennessee Prison for Women on June 15, 2015 I have addressed handicap accessibility" at that facility. (Doc. No. 1, PageID# 8, ¶ 7.) She alleges that she was first assigned to a cell that did not provide any disability accommodations before being moved to a cell that lacked handrails for balancing and contained a sink that was poorly positioned for inmates who use wheelchairs. (*Id.* at ¶¶ 7–8.) Finally, on October 30, 2015, she was moved to a cell that was problematic for other reasons, including having insufficient space to maneuver her wheelchair. (*Id.* at PageID# 9, ¶ 9.)

Thompson experienced other problems outside of her cell, including an accident that resulted from her wheelchair being caught in a large crack in the pavement of a sidewalk and being prevented from taking a sidewalk better suited to wheelchair use because the sidewalk passed through the prison's maximum security area. (*Id.* at ¶¶ 10–11.) She further alleges that work options are severely limited for disabled inmates, that one accessible entrance to a building containing classrooms is difficult and dangerous for her to use in her wheelchair, and that the sidewalks are in a state of disrepair, resulting in a safety issue for her. (*Id.* at PageID# 9–10, ¶¶ 12–15.) Thompson states that she tried to address these issues with Unit Counselor Robertson, who threatened that she would be relocated to an assisted living unit. (*Id*. at PageID# 10, ¶ 16.) Thompson states that she would not have access to eligible work and program options in such a

---

[1] The Sullivan County Jail and two of its employees, Corporal Michael Cole and Sergeant Brandon Cole, were previously dismissed as defendants to this action. (Doc. No. 4, PageID# 46.)

unit and that her physical abilities do not require the high level of assistance such a facility would provide. (*Id.*)

In support of their motion seeking dismissal for failure to exhaust, Defendants submit the affidavit of Benjamin Bean, the authorized custodian of grievance records by virtue of his role "as the designee for the Deputy Commissioner of Operations for the review and response for Grievance Appeals that are appealed to the Commissioner." (Doc. No. 44-1, PageID# 163, ¶¶ 1-2.) Mr. Bean's states that Thompson has filed four grievances since being incarcerated at the Tennessee Prison for Women, none of which was appealed through all three levels of the prison grievance procedure. (*Id.* at PageID# 164, ¶¶ 10–11.) The records of proceedings on all four grievances are attached to his affidavit.

## II. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner is required to exhaust all available administrative remedies before filing an action in federal district court under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' —rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Both Thompson and the Defendants have submitted the TDOC "Inmate Grievance Procedures" and the corresponding provisions of the TDOC inmate handbook. (Doc. No. 44-2;

Doc. No. 51, PageID# 250–78.)[2] In order to exhaust all available remedies under these procedures, a grievant must appeal a denial of or otherwise unsatisfactory response to the initial grievance twice, first to "the grievance committee and Warden" and, if unsatisfied with this "Level II" response, then to "the Deputy Commissioner of Operations/designee" for a "Level III" response that is "final and not subject to appeal." (Doc. No. 51, PageID# 252.)

It is undisputed that, of the three TDOC grievances Thompson filed before filing suit in this Court, none was appealed past Level II. Defendants have supported their motion with proof that Thompson declined to appeal grievances 00293603 (Doc. No. 44-3, PageID# 205), 00295027 (Doc. No. 44-4, PageID# 210), and 00297338 (Doc. No. 44-5, PageID# 220). Thomas does not argue otherwise. In her response to the motion to dismiss, Thompson states that:

> In its motion to dismiss, the State correctly points out that Petitioner has failed to exhaust her administrative remedies. The motion to . . . dismiss should nevertheless be denied due to the fact that [TDOC] has [not] fundamentally adhered to its own administrative procedures. [TDOC]'s repeated failure to abide by its own procedures for reviewing grievances has rendered Petitioner incapable of exhausting her administrative procedures.

(Doc. No. 51, PageID# 246, ¶ 1.)

Under the PLRA, a prisoner must exhaust only those administrative remedies that are "available." 42 U.S.C. § 1997e(a). "Prison authorities cannot immunize themselves from suit by establishing procedures that in practice are not available because they are impossible to comply with or simply do not exist." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). Thus, if Thompson could show that she failed to exhaust because TDOC's "failure to abide by its own

---

[2] The version of the Inmate Grievance Procedures submitted by Defendants was superseded by the version submitted by Thompson, effective August 12, 2014. (Doc. No. 51, PageID# 250.) There are no differences between the two versions that are material to this case.

4

procedures" made its grievance procedure functionally unavailable, she could overcome the hurdle exhaustion presents.

Thompson's allegations, however, do not support such a finding. In her response, Thompson describes the following attempts to have her concerns over accessibility for inmates with disabilities in the Tennessee Prison for Women addressed:

8. October 15, 2015, a letter was sent to the Title VI Coordinator requesting assistance. Petitioner received a written response indicating that although they could not investigate the issues presented to them that they would forward the information to appropriate Tennessee Department of Correction personnel.

9. October 29, 2015, Petitioner spoke to Shift Commander Captain Henry to address a major handicap accessibility and safety concern in current housing location. The safety issue needed to be addressed immediately and did not affect Petitioner in any manner. Officer Victoria Mosely denied multiple requests to contact the shift commander, and repeatedly threatened the Petitioner with disciplinary action.

10. November 9, 2015, [Petitioner spoke to] Corporal Polk and Sergeant Black regarding the handicap accessible sidewalks. Petitioner was repeatedly denied access to this area and advised that permission to access this area was at the yard officer's discretion. Warden Freeman had addresse[d] Petitioner and advised her that there should be no further issues with access to this area.

11. December 15, 2015, Petitioner made initial written complaint to the United States Department of Justice, Civil Rights Division.

12. February 20, 2016, Shift Commander Captain Henry advised Petitioner that handicap accessible sidewalks were not to be used. Petitioner advised Captain Henry of Warden Freeman's addressing of the use of handicap accessible sidewalks. Captain Henry advised Petitioner not to return to these restricted areas or face disciplinary measures.

13. February 23, 2016, Petitioner sent written correspondence to the Warden's Office seeking assistance and resolution for the issue outlined in grievance No: 00298724. TDOC Policy 501.01 VI(I)(1) prevents any additional grievances being filed regarding the matter or similar events.

14. Petitioner has been unable to move the grievance to the next level of appeal as outlined in TDOC Policy 501.01 (D). Petitioner has requested that the appeal be reviewed on multiple occasions without success. Petitioner has entered into no written agreements for an extension of time at the current level of review.

15. February 26, 2016, Petitioner forwarded documentation to the United States Department of Justice per request.

(Doc. No. 51, PageID# 247–48.)

While Thompson alleges that she pursued the issue of access for persons with disabilities through several channels, she does not allege that she was prevented from pursuing a grievance through all available steps of the TDOC grievance process. Both Thompson's October 2015 letter to the Title VI coordinator (Doc. No. 1, PageID# 25–28) and her December 2015 complaint to the United States Department of Justice were lodged with third parties outside the prison system. Thus, they do not serve the purpose of "allowing a prison to address complaints about the program it administers before being subjected to suit." *Bock*, 549 U.S. at 219. Nor do Thompson's allegations that she talked with prison officials about her complaints show that she did so because she could not file and properly exhaust a grievance. They, also, are not steps toward proper exhaustion.

The only allegations that reflect Thompson's attempts to exhaust her claims through the prison grievance process—i.e., to properly exhaust, *Ngo*, 548 U.S. at 88—are in relation to grievance 00298724. With regard to that grievance, Thompson states that she asked for review of her appeal ruling several times "without success," and that she could not adequately pursue that grievance because of a policy that prevents more than one claim arising out of the same events to be filed at a time. Thompson's efforts could be seen as attempting to navigate procedural hurdles in the TDOC grievance process so as to properly exhaust. However, even if she had properly exhausted grievance 00298724, that exhaustion would not help her present claims.

First, grievance 00298724 was not filed until February 11, 2016 (Doc. No. 46, PageID# 230), well after Thompson's initiation of this action. "The plain language of the statute makes exhaustion a precondition to filing an action in federal court. The prisoner, therefore, may not

exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citations omitted).[3] Second, grievance 00298724 addresses Mr. Robinson's "derogatory remarks and aggressive, intimidating behavior" toward female inmates generally and does not address the access issues Thompson raises in her complaint. (Doc. No. 44-6, PageID# 230–32.) Thus, even if Thompson did adequately exhaust this grievance, she did not exhaust the claims raised in her complaint.

By Thompson's own admission, her grievances were not pursued through the end of TDOC's grievance process before she filed suit. She has not fully and properly exhausted her administrative remedies so as to allow this case to proceed under the PLRA.

### III. Recommendation

In light of the foregoing, the Magistrate Judge RECOMMENDS that Defendants' Motion to Dismiss for Failure to Follow Grievance Procedures (Doc. No. 43) be GRANTED and that this case be DISMISSED WITHOUT PREJUDICE for Thompson's failure to properly exhaust her administrative remedies.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Fed. R. Civ. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of

---

[3] The record of proceedings on grievance 00298724 is attached as "Exhibit E" to Mr. Bean's affidavit. (Doc. No. 44-6.) That record appears to show that proceedings were ongoing at the time that Defendants' motion was filed, as computer-generated records indicate that a "Warden Response Date Due" of March 28, 2016 was generated along with an "Appeal to Level 3 Date Due" (*id.* at PageID# 226), followed by a subsequent record showing generation of a "Commissioner Response Date Due" of May 6, 2016, (*id.* at PageID# 227).

further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 24th day of February, 2017.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge