# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| SHANNON LEE THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-1527 |
| ) | Judge Aleta A. Trauger |
| COUNSELOR ROBERTSON et al., ) | |
| ) | |
| Defendants ) | |

## MEMORANDUM

Before the court is the plaintiff's Objection (Doc. No. 56) to the Report and Recommendation ("R&R") filed by Magistrate Judge Newbern (Doc. No. 47), recommending that the defendants' Motion to Dismiss for Failure to Exhaust Grievance Procedures (Doc. No. 43) be granted and that the entire action be dismissed without prejudice.

Any party may, within fourteen days after being served with a magistrate judge's recommendation as to a dispositive matter, "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation to which objections are properly lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). An objection is properly made if it is sufficiently specific to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The court has reviewed the plaintiff's objections *de novo* and, for the reasons set forth herein, will overrule the Objection and accept the magistrate judge's recommendation that this action be dismissed without prejudice for failure to exhaust.

## I. PROCEDURAL BACKGROUND

The plaintiff is a prisoner in the custody of the Tennessee Department of Correction ("TDOC") and confined at the Tennessee Prison for Women ("TPFW"). She alleges generally that she is an amputee confined to a wheelchair and that the facilities at TPFW are not handicap accessible, in violation of her federal rights. She seeks declaratory, injunctive and monetary relief against Vickie Freeman, TPW Warden; seven members of the Warden's staff; and Derrick Schofield, TDOC Commissioner. The court conducted an initial review of the Complaint and determined that it stated colorable claims under 42 U.S.C. § 1983 for violations of the plaintiff's rights under the Eighth Amendment.

On April 8, 2016, the defendants filed their Motion to Dismiss (Doc. No. 43) along with a supporting Memorandum of Law (Doc. No. 44). In this motion, the defendants argue that they are entitled to judgment as a matter of law on the basis that the plaintiff failed to exhaust her administrative remedies prior to filing suit in federal court, because she did not appeal any of her grievances to the third and final level authorized by TDOC's Grievance Policy. The plaintiff filed a Response to Motion to Dismiss (Doc. No. 51), acknowledging that she did not fully exhaust administrative remedies by filing administrative appeals. She argues, however, that the defendants have not adhered to TDOC's own administrative procedures, thus rendering the plaintiff "incapable of exhausting her administrative remedies." (Doc. No. 51, at 1.) She also points out that, pursuant to TDOC's grievance policy, "If the Warden agrees to the grievant's requested solution, the grievant shall not have the right to appeal to Level III." (*Id.* at 2 (quoting

TDOC Policy 501.01(VI)(c)(2)).)

The magistrate judge recommends that the Motion to Dismiss be granted on the basis that, in order to exhaust all administrative remedies under the TDOC Grievance Policy, a grievant must appeal a denial or otherwise unsatisfactory response to the initial grievance twice, first to "the grievance committee and Warden" and, if unsatisfied with this "Level II" response, then to the "Deputy Commissioner of Operations/designee" for a "Level III" response that is "final and not subject to appeal." (Doc. No. 53, at 4 (quoting TDOC Grievance Policy 501.01 ¶¶ VI(C)(2) & (3), , Doc. No. 44-2, at 3).) The magistrate judge found that the plaintiff had not exhausted her administrative remedies by appealing and had not provided a valid basis for waiver of the exhaustion requirement.

In her Objection, the plaintiff points out that the Prison Litigation Reform Act only requires exhaustion of "such administrative remedies as are available." (Doc. No. 56, at 1 (quoting 42 U.S.C. § 1997e(a)).) She argues that she actually appealed more than one grievance to Level II, was granted relief, and the Warden approved the recommended relief. Under TDOC Policy 501.01 ¶ VI(C)(2), if the Warden approves a suggested remedy, no Level III appeal is permitted. That is, no appeal was "available" to the plaintiff, for purposes of 42 U.S.C. § 1997e(2). She also argues that recurring issues cannot be addressed through TDOC's Grievance Policy, which states: "Inmates shall not be permitted to submit more than one grievance arising out of the same or similar incident." (Doc. No. 56, at 1 (quoting TDOC Policy 501.01 ¶ VI(J)(1)).)

## II. DISCUSSION

### A. Allegations in the Complaint

The plaintiff is an amputee who is confined to a wheelchair. She has been incarcerated at

TPFW since July 15, 2015. (Doc. No. 1 § IV.) She alleges that she has struggled to address "handicap accessibility" at the prison since her arrival. (*Id.* § IV(7).) She alleges that she was first assigned to a cell that did not provide any disability accommodations. (Id. §§ IV(7)–(8).) On October 30, 2015, she was moved to a cell that was problematic for other reasons, including having insufficient space to maneuver her wheelchair. (*Id.* § IV(9).)

She experienced other handicap-accessibility issues outside of her cell, including an accident that resulted from her wheelchair being caught in a large crack in the pavement of a sidewalk and being prevented from taking a sidewalk better suited to wheelchair use because the sidewalk passed in front of the entrance to the prison's maximum security area. (*Id.* ¶¶ IV(10)–(11).) She further alleges that work options are severely limited for disabled inmates, that one accessible entrance to a building containing classrooms is difficult and dangerous for her to use in her wheelchair, and that the sidewalks are in a state of disrepair, resulting in a safety issue for her. (*Id.* ¶¶ IV(12)–(15).) The plaintiff states that she tried to address these issues with Unit Counselor Robertson, who threatened that she would be relocated to an assisted living unit. (*Id.* ¶ IV(16).) She alleges that she would not have access to eligible work and program options in such a unit and that her physical abilities do not require the high level of assistance such a facility would provide. (*Id.*)

The plaintiff seeks a declaration that the "acts and omissions described herein violated [her] rights under the Constitution and laws of the United States." (Compl. at 10.) She also seeks injunctive relief and compensatory and punitive damages against each defendant.

In conjunction with her Objection, the plaintiff also filed a Motion to Amend and proposed Amended Complaint (Doc. Nos. 58, 58-1). The proposed Amended Complaint again relates her problems being assigned to a non-handicap-accessible room from July 15, 2015 until

October 29, 2015 despite several requests for handicap accommodations; her difficulties navigating the sidewalks around the prison grounds and accessing prison programs; her difficulties accessing the new cell to which she was assigned beginning October 29 or 30, 2015; difficulty accessing the bathroom from her new cell; events that occurred after she filed her original Complaint, and additional grievances filed up through the date of the proposed Amended Complaint. She alleges that, as of March 2, 2017, she remains housed in a cell that is not handicap accessible. On March 3, 2017, she was advised that she would be able to transfer to an assisted living unit, but from that unit, she would be required to stop attending any of her current work details or school programs. She alleges continued violations of her federal constitutional and statutory rights. (Doc. No. 58-1.)

### B. Plaintiff's Grievances

In support of their Motion to Dismiss, the defendants submit the affidavit of Benjamin Bean, TDOC Correctional Program Manager and the person designated by the Deputy Commissioner of Operations to review and respond to Grievance Appeals that are appealed to the Commissioner. (Bean Aff. ¶ 1, Doc. No. 44-1.) Attached to the Bean Affidavit are (1) TDOC's Grievance Policy; and (2) all grievances filed by the plaintiff from July 15, 2015 through April 5, 2016.[1] Bean avers that the plaintiff filed four grievances during that time frame, numbered 00293603, 00295027, 00297338, and 00298724, and that of these, none were "fully exhausted." (Bean Aff. ¶ 11.) Two of these grievances are not relevant to this discussion and the court will not address them further.[2]

---

[1] Most of the same grievance documents are attached to the Complaint, but they are presented in a more orderly fashion by the defendants.

[2] Grievance No. 00297338, concerns the plaintiff's difficulties in having an outside doctor's appointment rescheduled after her first appointment was cancelled due to a transportation error. (Doc. No. 44-5, at 5.) The plaintiff did not appeal the Supervisor's

Grievance No. 00293603, filed on August 10, 2015, concerned Counselor Robertson's "rude and inappropriate" behavior. (Doc. No. 44-3, at 6.) The plaintiff details her problems with Counselor Robertson, primarily in attempting to ascertain her "classification" status as a newly admitted inmate and in obtaining a copy of her TOMIS sheet. (*Id.* at 7.) She complained that he shouted at her and other inmates, refused to answer their questions or provide guidance, insulted her, and threatened to send her to assisted living "without any justifiable reason." (*Id.*) She concludes:

> I am not comfortable with making any future attempt to complete my classification or entrust him with any of my needs or goals while I am incarcerated, and I do not believe he promotes the mission of TPFW and am discouraged that I remain unable to utilize any of the therapeutic, vocational, or educational services you offer.

(*Id.*) Her "Requested Relief" was that the prison "[a]ddress the behavior with the proper disciplinary steps outlined in your employee handbook." (*Id.* at 6.) In other words, this grievance did not serve to put the defendants on notice that the plaintiff believed that her rights under the Americans With Disabilities Act or the Eighth Amendment were being violated, or even that she was having accessibility problems related to her being confined to a wheelchair. Instead, she was concerned that Robertson yelled at and insulted her and was not being helpful.

The Response of Supervisor, dated September 1, 2015, stated: "This will be discussed with the Counselor and training will be offered to all correctional counseling staff regarding non-confrontational communications with offenders." (Doc. No. 44-3, at 10.) The plaintiff appealed this response by checking the appropriate box on her grievance form. (*Id.* at 7.)

A hearing was conducted on September 24, 2015, the minutes of which were submitted

---

Response, and, in any event, she did not address this issue in her Complaint. Grievance No. 00298724, dated February 11, 2016—more than a month after the plaintiff filed her Complaint in this action—concerns the plaintiff's difficulties dealing with a specific corrections officer who is not named as a defendant in this action. It does not concern handicap accessibility issues.

by the defendants. At the hearing, the plaintiff complained specifically that Robertson was unwilling to work with her and had threatened to put her in Unit 3 Assisted Living. (*Id.* at 11.) At this time, she noted that there were available handicap accessible cells but that she had been in the "new admission pod" since her arrival, "which is not a wheelchair friendly room." (*Id.*) She had a helper, but the helper was assigned to a different pod. She had asked to be moved, "but no one seems to want to help." (*Id.*) The Grievance Board Chairperson asked if she wanted to be assigned to a handicap-accessible room, to which the plaintiff responded, "Yes!" (*Id.*) The Board's recommendation was that the grievant be granted handicap accommodations. (*Id.*) The Warden approved this recommendation on October 14, 2015. (*Id.* at 13.) The plaintiff did not appeal this decision. (*Id.*)

Grievance No. 00295027, dated October 11, 2015, again concerned "offensive and discriminatory remarks" by corrections officers, this time concerning the plaintiff's "movement on the compound and the use of her wheelchair. (Doc. No. 44-4, at 5.) The plaintiff complained that Officer Polk refused to allow her to use an easily navigable sidewalk because it passed before the gates to the secured unit. Instead, she was required to use a different sidewalk which was in a state of disrepair. She followed Officer Polk's instruction and, because of the crumbling sidewalk, was thrown out of her wheelchair. She does not allege that she was injured, but her wheelchair was damaged. The plaintiff complained at length about the failure to correctly repair the sidewalks or repair her wheelchair and her difficulty in accessing prison programs. She mentions numerous prison officials, including defendants Polk and Walker, Warden Freeman. The plaintiff alleged extreme difficulty using the sidewalks around the prison and damage to her wheelchair. (Doc. No. 44-4, at 5–8.) She stated that the "behavior of these officers only reinforces the lack of program availability and access in this facility" and that she had tried

unsuccessfully "to resolve this through counselors and our Title VI contact." (*Id.* at 7.)

The plaintiff's "Requested Solution" for the problems raised in this grievance was "Proper education of all TPFW employees. ADA compliance for all buildings and housing units." (*Id.* at 5.) The Response of Supervisor, however, was that staff would be reminded to speak respectfully to all inmates and that the sidewalks were patched to make them smoother. (*Id.* at 9.) The plaintiff, apparently mollified by this response, opted not to appeal. (*Id.* at 5.)

**C.     Discussion**

One of the "centerpieces" of the PLRA's effort "to reduce the quantity . . . of prisoner suits" is an "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a). *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). That provision states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to fully and "properly" exhaust their administrative remedies as to each claim in the complaint and to complete the exhaustion process prior to filing an action in federal court. *Woodford*, 548 U.S. at 90; *Booth v. Churner*, 532 U.S. 731, 738 (2001). Importantly, the Supreme Court has emphasized that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also*

*Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must fully comply with the specific procedural requirements of the incarcerating facility. *Id.*

As pertains to this case, Tennessee state prisoners must comply with all available remedies under TDOC's Grievance Policy in order to properly exhaust. Specifically, a grievant must appeal a denial or otherwise unsatisfactory response, first, to the grievance committee and Warden. (TDOC Grievance Policy 501.01 ¶¶ VI(C)(2), Doc. No. 44-2, at 3.) "If the Warden agrees to the grievant's requested solution, the grievant shall not have the right to appeal to Level III." (*Id.*) Otherwise, if the grievant disagrees, she may appeal the Level II response to the "Deputy Commissioner of Operations/designee." (*Id.* ¶ VI.3.)

### (1) Grievance No. 00293603

The court construes the plaintiff's Objection as arguing that the plaintiff fully exhausted this grievance because she was granted the relief she requested—a handicap accessible room. In addition, she argues that, because she was granted relief, at least theoretically, she was not permitted to appeal to the third level. She also asserts that the Grievance Policy forbids repeat grievances concerning the same or similar issues, suggesting that she would be unable to file a grievance related to the fact that she was promised but did not receive a handicap-accessible cell.

In fact, Grievance No. 00293603 did not request relief in the form of a handicap accessible cell. As indicated above, the plaintiff requested only that Counselor Robertson be disciplined in accordance with the prison's procedure. (Doc. No. 44-3, at 6.) Grievance No. 00293603 cannot reasonably be construed as a request for accommodations for the plaintiff's disabilities. Moreover, because the hearing administrator's recommended resolution was not the

same as the relief sought by the plaintiff, the plaintiff could have taken a further appeal, particularly if she believed that Counselor Robertson had discriminated against her on the basis of her disability or, if she actually did ask him to help her with accommodations for her disability, that he failed to provide her a reasonable accommodation. Moreover, because this grievance did not actually request an accommodation for the plaintiff's disability, the plaintiff was not prohibited by the Grievance Policy from filing a grievance specifically requesting reasonable accommodations.

In short, a third-level appeal was "available," but the plaintiff did not appeal this grievance to the third level. Because she did not pursue "such administrative remedies as are available," 42 U.S.C. § 1997e(a), she did not fully exhaust this claim. Even if she had, it is unclear that the claim actually raised in the grievance is the same as any of the claims she seeks to bring in her Complaint or proposed Amended Complaint.

### *(2)  Grievance No. 00295027*

In this grievance, the plaintiff came closer to asking for accommodations for her disability, as she specifically requested relief in the form of training for TPW employees and ADA-compliant buildings and housing units. She did not obtain this relief at the first-level response to her grievance. Instead, she was simply told that staff would be reminded to speak respectfully to all inmates and that the sidewalks had been patched. Accordingly, she was not prohibited by the Grievance Policy from pursuing an appeal. She nonetheless chose not to appeal, and she admits in her Objection that she did not fully exhaust this claim. She did not exhaust the claims set forth in this grievance either.

In order to bring a federal lawsuit based on prison officials' violation of the Americans With Disabilities Act or other federal law, the plaintiff must first seek a reasonable

accommodation from the appropriate prison authorities, bring a grievance in accordance with the prison's Grievance Policy if such requests are not satisfactorily resolved, and pursue the denial or unfavorable outcome of the grievances through a Level III appeal. *Accord O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061–62 (9th Cir. 2007) (interpreting § 1997e(a) "as requiring prisoners to exhaust prison administrative remedies for claims under Title II of the ADA"); *Morgan v. Tenn. Dep't of Corr.*, 84 F. App'x 610, 611 (6th Cir. 2003) (rejecting the plaintiff's claim that he was excused from exhausting administrative remedies because he was disabled).

### *(3) Proposed Amended Complaint*

In her proposed Amended Complaint, the plaintiff raises new claims concerning events that occurred after she filed her original Complaint, and she references numerous additional grievances submitted after the she filed the original Complaint. She does not indicate that any of these grievances actually requested disability accommodations or that they have been fully exhausted in accordance with TDOC's Grievance Policy. Even if they have been, the fact that none of the claims in the original Complaint were fully exhausted before the plaintiff filed suit requires that this action be dismissed without consideration of the plaintiff's new claims, regardless of whether they have been exhausted.

The Sixth Circuit has recently held that Rule 15(d) of the Federal Rules of Civil Procedure "permits a prisoner to amend his complaint to add new claims that have only been exhausted after the commencement of the lawsuit." *Mattox v. Edelman*, No. 16-1412, 2017 WL 992510, at *5 (6th Cir. March 15, 2017). *See id.* at *6 ("If a prisoner exhausts some of his claims after a proper federal lawsuit has been filed as to other claims, and then moves to amend his complaint to add the newly exhausted claims, the policy behind the PLRA's exhaustion

requirement is still met because prison officials will have had a fair opportunity to address the new claims on the merits."). However, in order to amend a complaint to allege newly exhausted claims, at least one claim in the original complaint must have been fully exhausted prior to the plaintiff's filing suit. *See id.* at *7. ("Rule 15(d) [likely] could not save an action that did not comply with the PLRA's exhaustion requirement in any way.").

Accordingly, this action must be dismissed without consideration of the allegations in the proposed Amended Complaint.

### III. CONCLUSION

The court has reviewed *de novo* the plaintiff's Objection and the entire record and concludes that the magistrate judge did not err as a matter of fact or law in recommending that this action be dismissed for failure to exhaust as required by the PLRA.

Accordingly, the plaintiff's Objection to the R&R will be overruled. The R&R will be accepted, and the plaintiff's claims will be dismissed without prejudice to refile them if she fully exhausts these or other claims in the future.

An appropriate order is filed herewith.

 ALETA A. TRAUGER
 United States District Judge